**No. 24-5351**

---

# UNITED STATES COURT OF APPEALS
## for the SIXTH CIRCUIT

---

ANDREW COOPERRIDER, *et al.*,

*Plaintiffs-Appellants*

v.

MAGGIE WOODS, *et al.*,

*Defendants-Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
No. 3:22-cv-00016-GFVT

---

## APPELLEE BRIEF OF GOVERNOR ANDY BESHEAR

Travis Mayo
Taylor Payne
Laura C. Tipton
Office of the Governor
700 Capitol Ave., Ste. 106
Frankfort, KY 40601
502-564-2611
Travis.Mayo@ky.gov
Taylor.Payne@ky.gov
Laurac.Tipton@ky.gov

*Counsel for Governor Andy Beshear*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………... iv

STATEMENT CONCERNING ORAL ARGUMENT…………………………...vii

STATEMENT OF ISSUES................................................................................. 1

STATEMENT OF THE CASE…………………………………………………..2

FACTUAL BACKGROUND.............................................................................2

SUMMARY OF THE ARGUMENT…………………………………………... 7

ARGUMENT………………………………………………………………......7

    I.    Standard of Review…………..……………………………………… 8

    II.    Appellants' Complaint Fails To Set Forth A Plausible Claim Against The Governor…………………………………………………... 9

    III.    The Governor Is Immune From Appellants' Claims...........................12

    IV.    Appellants Fail To State Any Claim Upon Which Relief Can Be Granted………………………………………………………...16

        A. Appellants Cannot Prevail on Their First Amendment Retaliation Claim........................................................................16

        B. Appellants Cannot Prevail on Their Due Process Claims...............21

            1. The Complaint fails to allege a procedural due process violation..................................................................................22

            2. The Complaint fails to allege a substantive due process violation..................................................................................24

            3. Even if the Complaint's due process claims do not fail as a matter of law, because they rely on interpretations of state law that Appellants are actively adjudicating in state court, the judicating

in state court, the *Younger* abstention doctrine applies................................................................29

    V.    The Statute of Limitation Bars Appellants' Claims.............................32

CONCLUSION…………………………………………………………………... 33

CERTIFICATE OF COMPLIANCE.......................................................................35

CERTIFICATE OF SERVICE..............................................................................35

ADDENDUM........................................................................................................36

**TABLE OF AUTHORITIES**

**Cases**

*37712, Inc. v. Ohio Dep't of Liquor Control*, 113 F.3d 614 (6th Cir. 1997)...........26

*Alexander v. Morgan*, 353 F. Supp. 3d 622 (W.D. Ky. 2018)...............................30

*Angel v. Kentucky*, 314 F.3d 262 (6th Cir. 2002)................................................7, n. 3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).....................................................8, 9, 10, 12

*Barrett v. Steubenville City Schs.*, 388 F.3d 967 (6th Cir. 2004)...........................15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)....................................8, 9, 10

*Boshaw v. Midland Brewing Co.*, 32 F.4th 598 (6th Cir. 2022).............................20

*Bowers v. City of Flint*, 325 F.3d 758 (6th Cir. 2003)..............................................24

*Brookpark Entertainment, Inc. v. Taft*, 951 F.2d 710 (6th Cir. 1991)...............28, 29

*Carey v. Piphus*, 435 U.S. 247 (1978).....................................................................22

*Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412
(6th cir. 1996)............................................................................................................13

*Cicchini v. Blackwell*, 127 F. App'x 187 (6th Cir. 2005)........................................24

*Cmty. Mental Health Servs. v. Mental Health & Recovery Bd. Serving Belmont,
Harrison & Monroe Ctys.*, 150 F. App'x 389 (6th Cir. 2005).........................14, 15

*Collard v. Ky. Bd. of Nursing*, 896 F.2d 179 (6th Cir. 1990)................................32

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011)......21

*Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956 (6th Cir. 2013)...................................13

*Doe v. Univ. of Kentucky*, 860 F.3d 365 (6th Cir. 2017)........................................30

*Ex parte Young*, 209 U.S. 123 (1908)................................................................12, 13

*Hafford v. Seidner*, 183 F.3d 506 (6th Cir. 1999)..................................................20

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982).............................................................15

*Henley v. Tullahoma City Sch. Sys.*, 84 F. App'x 534 (6th Cir. Dec. 5, 2003)........33

*Herman v. Ohio Univ.*, No. 2:19-cv-201, 2019 U.S. Dist. LEXIS 203111 (S.D. Ohio Nov. 22, 2019)..................................................................23

*Howard v. Grinage*, 82 F.3d 1343 (6th Cir. 1996)..................................................23

*Kentucky v. Graham*, 473 U.S. 159 (1985)..........................................................12

*Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454 (1989)....................21-22

*Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010)..........................................25

*Mathews v. Eldridge*, 424 U.S. 319 (1976)..........................................................21

*Middlesex Cty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)..................................................................................................30

*Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758 (6th Cir. 2005)..................26

*Mills v. Williams*, 476 F. Supp. 2d 653 (E.D. Mich. 2007)....................................17

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950)..........................22

*Owens v. Okure*, 488 U.S. 235 (1989)..................................................................31

*Papasan v. Allain*, 478 U.S. 265 (1986)................................................................8

*Parrino v. Sebelius*, 155 F. Supp. 3d 714 (W.D. Ky. 2015)............................24, 25

*Paterek v. Village of Armada*, 801 F.3d 630 (6th Cir. 2015)..........................27, 28

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)........................12

*Philly's v. Byrne*, 732 F.2d 87 (7th Cir. 1984)......................................................29

*Prater v. City of Burnside, Ky.*, 289 F.3d 417 (6th Cir. 2002)................................8

*Range v. Douglas*, 763 F.3d 573 (6th Cir. 2014)..................................................25

*Ryan v. Blackwell*, 979 F.3d 519 (6th Cir. 2020)..................................................18

*Smoak v. Hall*, 460 F.3d 768 (6th Cir. 2006)........................................................16

*Talleywhacker, Inc. v. Cooper*, 465 F. Supp. 3d 523 (E.D.N.C. 2020)....................25

*Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220 (6th Cir. 1997)..............25

*Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392 (6th Cir. 2010)..................17, 19

*Verizon Md. Inc. v. PSC*, 535 U.S. 635 (2002)......................................................14

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)..........................................12

*Williams v. Pennsylvania*, 579 U.S. 1 (2016)..........................................................23

*Yablonsky v. Cal. Dep't of Corr. & Rehab.*, No. 18-cv-1122-AGS, 2022 U.S. Dist. LEXIS 180054 (S.D. Cal. Sept. 30, 2022)..........................................................20

*Younger v. Harris*, 401 U.S. 37 (1979)....................................................................30

## Constitutional Provisions

U.S. Const. amend. XI.................................................................................................12

U.S. Const. amend. XIV.............................................................................................21

## Federal Statutes

42 U.S.C. § 1983................................................................................................16, 32

## State Statutes

KRS 13B.140...............................................................................................................31

KRS 244.120.........................................................................................................26, 29

KRS 413.140(1)(a).....................................................................................................32

## STATEMENT CONCERNING ORAL ARGUMENT

While the Governor stands ready to present oral argument, he respectfully submits that this appeal can be resolved on the briefs.

## STATEMENT OF ISSUES

1.  Should the District Court be affirmed where the bare, conclusory allegation of Appellants' Complaint fail to set forth any plausible claim against the Governor?

2.  Should the District Court be affirmed because sovereign immunity applies to bar Appellants' claims against the Governor in his official capacity, and Appellants' claims for declaratory and injunctive relief against the Governor in his individual capacity are indistinguishable from the official capacity claims?

3.  Should the District Court be affirmed because qualified immunity bars the claims against the Governor in his individual capacity seeking monetary relief, as Appellants' First Amendment retaliation and procedural and substantive due process claims fails to state any claim upon which relief can be granted as to the Governor?

4.  Should the District Court be affirmed because the *Younger* abstention doctrine bars Appellants' due process claims?

5.  Should the District Court be affirmed because the applicable one-year statute of limitations bars Appellants' claims to the extent they allege the Governor's 2020 remarks or the institution of administrative enforcement proceedings were themselves retaliatory?

1

## STATEMENT OF THE CASE

Plaintiffs-Appellants Andrew Cooperrider and Deans Diner, LLC d/b/a Brewed ("Brewed") filed suit following the revocation of Brewed's alcohol license by the Kentucky Department of Alcoholic Beverage Control ("ABC") for failure to comply with the Governor's executive orders establishing public health measures to address COVID-19, as well as a longstanding state statute. Plaintiffs-Appellants named the Governor in their suit based on their erroneous and bare allegations, unsupported by any evidence, that ABC acted at the Governor's direction. In a thorough opinion, the District Court properly dismissed the Governor from the lawsuit nearly a year before final judgment in the case. This appeal followed.

## FACTUAL BACKGROUND

Appellant Cooperrider owned Appellant Brewed. Per Appellants' Complaint, Cooperrider began making "highly critical" social media posts, on his own social media page and that of Brewed, regarding Governor Beshear's COVID-19 response in March 2020, such that, by November 2020, Cooperrider had "engaged in a series of highly critical posts regarding Defendant Beshear and his shuttering of restaurants and bars." (Complaint, RE 1, Page ID# 4, ¶¶ 12-13.) Appellants continued to make similar posts from November 2021 to the date they filed the Complaint. (*Id.* at ¶ 14). Appellants allege that the Governor, "in public

statements and speeches, [has] directly addressed the speech of Plaintiffs, usually in a manner that expresses his anger at such speech." (*Id.* at ¶ 16.)

The Governor's response to COVID-19 included emergency executive orders that required the wearing of face coverings in indoor public settings and prohibited indoor dining and drinking in restaurants and bars. (*See id.* at ¶ 17.) Appellants concede that the Governor had authority to issue these executive orders under KRS Chapter 39A, as it existed at the time. (*See id.*) On or about November 25, 2020, the Kentucky Department of Alcoholic Beverage Control instituted an administrative enforcement action against Brewed, seeking revocation of its alcohol license for failure to comply with the Governor's executive orders, as well as a state statute. (*See id.* at ¶ 18.)

Later, on January 8, 2021, Cooperrider and others filed an unsuccessful petition with the Kentucky House of Representatives seeking Governor Beshear's impeachment. (*See id.* at ¶ 19.)

During its 2021 Regular Session, the General Assembly passed legislation to amend KRS Chapter 39A, including House Bill 1, House Joint Resolution 77, and certain provisions of House Bill 192, the budget bill. (*Id.* at ¶¶ 21-27.) Appellants contend that the legislation should have halted the ABC administrative enforcement proceedings against Brewed. (*Id*. at ¶ 46.) Notably, although

Appellants fail to mention it in their brief, implementation and enforcement of HB

1 and HJR 77 were enjoined by a state court until September 14, 2021.[1]

Brewed's license revocation hearing occurred on or about May 21, 2021.

(*Id.* at ¶ 31.) On or about March 4, 2022, ABC took final action to revoke

Brewed's alcohol license. (*Id.* at ¶ 35.) The hearing and final action related only to

conduct that occurred prior to the passage of the 2021 legislation. Without any

supporting facts, Appellants vaguely allege that Governor Beshear directed that no

settlement be offered to Brewed and that Brewed's license be revoked to punish

Appellants for their First Amendment activity. (*Id.* at ¶¶ 34-35.)

On March 24, 2022, Appellants filed suit against the Governor and others,

raising claims of First Amendment retaliation and procedural and substantive due

process under 42 U.S.C. § 1983. Their Complaint sought declaratory and

injunctive relief, as well as compensatory and punitive damages against the

defendants in their individual capacities. The Governor was served with the

Complaint on April 4, 2022. (Summons Return, RE 6.)

---

[1] *See Beshear v. Osborne*, Franklin Cir. Ct., Civil Action No. 21-CI-00089, Order
Granting Partial Restraining Order Under CR 65.03 Concerning House Bill 1 (Feb.
3, 2021); *Beshear v. Osborne*, Franklin Cir. Ct., Civil Action No. 21-CI-00089,
Order Granting Temporary Injunction Under CR 65.04 (Mar 3, 2021); *Beshear v.
Osborne*, Franklin Cir. Ct., Civil Action No. 21-CI-00089, Order (Apr. 7, 2021);
*Cameron v. Beshear*, 628 S.W.3d 61 (Ky. 2021).

Meanwhile, on March 31, 2022 – a week after filing its Complaint – Brewed appealed the revocation of its alcohol license to Fayette Circuit Court under KRS 13B.140. (*See* Administrative Appeal, RE 8-2.) In its appeal, Brewed argued, in part, that the administrative enforcement proceedings continued in contravention of the 2021 legislation – HB 1, HJR 77, and HB 192. (*See id.*)

The Governor moved to dismiss Appellants' Complaint against him, with prejudice. On March 23, 2023, after full briefing, the District Court granted the Governor's Motion. (Memorandum Opinion & Order ("MOO"), RE 26.) Specifically, the District Court held that sovereign immunity bars Appellants' official capacity First Amendment and procedural due process claims against the Governor. (*See id.* at Page ID# 414.) The court then dismissed the individual capacity claims seeking declaratory and injunctive relief against the Governor because such claims are indistinguishable from Appellants' official capacity claims – they relate only to the named officials' jobs. (*See id.* at Page ID# 417-18.)

With respect to Appellants' claims for monetary relief, the court held the Governor to be entitled to qualified immunity because Appellants failed to allege conduct that violated their First or Fourteenth Amendment rights. (*Id.* at Page ID# 421.) In particular, the Court found that Appellants: failed to state a First Amendment retaliation claim because the mere continuation of administrative enforcement proceedings is not an adverse action, and even if it was, Appellants

failed to show that their speech caused the action (*id.* at Page ID# 424-27); failed

to state a procedural due process claim because the continuation of enforcement

proceedings does not violate the notice and hearing requirements of procedural due

process (*id.* at Page ID# 427-29); and failed to state a substantive due process

claim because there existed a rational basis for continuing the enforcement against

them (*id.* at Page ID# 429-31).

Nearly a year after the Governor's dismissal from Appellants' lawsuit, the

District Court entered final judgment in the case. (*See* Judgment, RE 34.)

Appellants appealed both the March 2023 dismissal order and the final judgment to

this Court.[2] (Notice of Appeal, RE 35.)

---

[2] On June 4, 2024, the Fayette Circuit Court reversed ABC's final order revoking
Brewed's license and remanded it for further proceedings consistent with its
opinion. Opinion and Order, *Deans Diner, LLC d/b/a Brewed v. Alcoholic
Beverage Control Board*, Civil Action No. 22-CI-00894 (Fayette Cir. Ct. June 4,
2024). In particular, the court determined that, regardless of whether the initial
suspension of Brewed's license was proper, ABC should have considered HB 1
passed by the Kentucky General Assembly in 2021 in determining whether to
make revocation of the license permanent and continuing. *Id.* The opinion failed to
recognize that HB 1 was enjoined at the time of the revocation hearing. *See id.* The
matter is currently on appeal to the Kentucky Court of Appeals. *Alcoholic
Beverage Control Board v. Deans Diner, LLC d/b/a Brewed*, No. 2024-CA-0800
(Ky. App.), https://appellatepublic.kycourts.net/case/
538e0e1517a3832ff74124cb4166b83e226c463526c97640cfcefdc760c80e50.

## SUMMARY OF THE ARGUMENT

The District Court correctly dismissed Appellants' Complaint as to Governor Beshear. The Complaint's conclusory allegations against the Governor are not sufficient to set forth plausible claims. Even assuming the claims are plausible, the doctrines of sovereign immunity and qualified immunity bar Appellants' claims against the Governor in his official and individual capacities. Further, Appellants' First Amendment retaliation and procedural and substantive due process claims fail as a matter of law, and the Court should apply *Younger* abstention to the due process claims. Finally, the applicable statute of limitations bars Appellants' claims to the extent they allege any remarks of the Governor or the institution of administrative enforcement proceedings were themselves retaliatory. This Court should affirm.

## ARGUMENT

This Court should affirm the dismissal of the Complaint against the Governor. Appellants fail to set forth a plausible claim against the Governor.[3] Alternatively, the First Amendment and due process claims fail as a matter of law, and the claims are otherwise barred by the immunity and abstention doctrines and the statute of limitations.

---

[3] Although the District Court did not specifically consider this argument, this Court is "free to affirm the judgment on any basis supported by the record." *Angel v. Kentucky*, 314 F.3d 262, 264 (6th Cir. 2002).

## I.  Standard of Review

This Court reviews de novo a district court's decision on a motion to dismiss. *See Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). In considering a Rule 12(b) motion to dismiss, the Court must construe the complaint in a light most favorable to the plaintiff and accept all factual allegations as true. *Id.* However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citation omitted).

Under *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the plausibility standard does not require proof that a defendant's liability is probable, "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Significantly, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

**II. Appellants' Complaint Fails To Set Forth A Plausible Claim Against The Governor.**

As noted above, Appellants' Complaint raises claims of First Amendment retaliation and procedural and substantive due process arising from an administrative enforcement action instituted by the Kentucky Department of Alcoholic Beverage Control that resulted in the revocation of the alcohol license of Appellant Brewed. Appellants' Complaint, however, is bereft of anything other than bare, conclusory allegations that the Governor had any direct involvement in that administrative enforcement action and the alleged unlawful conduct. Accordingly, the Complaint fails to present a claim for relief plausible on its face against the Governor.

In *Ashcroft v. Iqbal*, the Supreme Court considered the respondent detainee's allegations that John Ashcroft, former United States Attorney General, and Robert Mueller, then the Director of the Federal Bureau of Investigation, "adopted an unconstitutional policy that subjected [him] to harsh conditions of confinement on account of his race, religion, or national origin." 556 U.S. at 666. The Court ultimately determined that the respondent's complaint failed to contain sufficient factual allegations "to 'nudg[e]' his claim of purposeful discrimination 'across the line from conceivable to plausible.'" *Id.* at 683 (quoting *Twombly*, 550 U.S. at 570). Thus, the complaint could not survive a motion to dismiss as to defendants Ashcroft and Mueller. *See id.* at 688.

In reaching its conclusion, the Court rejected certain allegations made in the complaint as conclusory and not entitled to the assumption of truth. *See id.* at 680-81. In particular, the Court rejected the respondent's allegations that Ashcroft and Mueller "'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest[,]'" as well as his allegations that "Ashcroft was the 'principal architect' of this invidious policy," and "Mueller was 'instrumental' in adopting and executing it[.]" *Id.* According to the Court, "[t]hese bare assertions . . . amounted to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim." *Id.* at 681 (quoting *Twombly*, 550 U.S. at 555). The Court emphasized that it did "not reject these bald allegations on the ground that they [were] unrealistic or nonsensical." *Id.* Instead, it was "the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitle[d] them to the presumption of truth." *Id.*

Here, Appellants' Complaint baldly asserts that the Governor and other defendants "each directed that no settlement be offered to Brewed, because the Defendants desired to punish Brewed and Cooperrider for their First Amendment protected speech." (Complaint, RE 1, Page ID## 8-9, ¶ 34.) The Complaint further asserts that certain defendants revoked Brewed's alcohol license "in accord with

10

directives they received from Defendants Beshear" and others "primarily to punish

Brewed and Cooperrider for their First Amendment protected speech." (*Id.* at ¶

35.) Like the allegations in *Ashcroft v. Iqbal*, these conclusory allegations that

merely parrot the elements of a First Amendment retaliation claim are not entitled

to an assumption of truth.[4] Absent these allegations, nothing in the Complaint

connects the Governor to the administrative enforcement action prosecuted against

Brewed by ABC, and, therefore, to Appellants' First Amendment and due process

claims. In other words, the Complaint fails to contain sufficient factual allegations,

accepted as true, that would identify any causal connection between an action of

the Governor and the administrative enforcement proceedings that resulted in the

revocation of Brewed's alcohol license.

Instead, the Complaint alleges only that the Governor was aware that

Appellants violated his COVID-19 emergency orders relating to restaurants before

the General Assembly changed the law in 2021, in part because Appellants

advertised that fact on social media. Mere awareness of Appellants' social media

activity, however, does not make it plausible to infer that Governor Beshear

himself directed that any actions be taken to continue the administrative

enforcement action against Brewed or otherwise punish Brewed for protected First

---

[4] *See* infra, pp. 16-17, regarding the elements of a First Amendment retaliation claim.

Amendment conduct. Rather that inference is merely "possible."[5] Notably, the Governor cannot be held vicariously liable for the actions of his agents; rather, the Governor is only liable for his own conduct. *Iqbal*, 556 U.S. at 677.

As such, the Complaint fails to state a sufficient claim for relief against the Governor, and this Court should affirm the District Court's decision to grant the Governor's motion to dismiss.

## III. The Governor Is Immune From Appellants' Claims.

The Eleventh Amendment provides the Commonwealth with sovereign immunity. U.S. Const. amend. XI. The sovereign immunity guaranteed by the Eleventh Amendment deprives federal courts of subject matter jurisdiction when a citizen sues his own State unless the State waives its immunity or Congress abrogates that sovereign immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). A suit against a state official in his official capacity is a suit against the state. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

An exception to this general rule exists under *Ex parte Young*, 209 U.S. 123 (1908), whereby "a suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst*, 465 U.S. at 102. The *Ex parte Young*

---

[5] Given the temporal distance between Appellants' protected conduct and the Governor's alleged actions, as discussed more fully herein, the inference is improbable.

exception exists to provide prospective relief to end a continuing violation of federal law. *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013). But that means the exception "does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996). In other words, *Ex parte Young* does not reach state officials who "[a]re not expressly directed to see to [the statute at issue's] enforcement." 209 U.S. at 157.

To the extent Appellants' Complaint seeks any retroactive or monetary relief from the Governor in his official capacity, he is entitled to sovereign immunity. Furthermore, because the Governor is not "expressly directed to see to" the ABC enforcement actions at issue here, *Ex parte Young* does not constitute an exception to the general rule of sovereign immunity. The Governor's role as the supreme executive does not make him subject to suit for actions stemming from an ABC enforcement proceeding. *See Children's Healthcare*, 92 F.3d at 1416 ("Holding that a state official's obligation to execute the laws is a sufficient connection to the enforcement of a challenged statute would extend *Young* beyond what the Supreme Court has intended and held.").

Furthermore, as the District Court correctly determined, Appellants' "First Amendment and procedural Due Process claims do not allege an "ongoing

violation of federal law" or seek "relief properly characterized as prospective." (MOO, RE 26, Page ID# 414 (quoting *Verizon Md. Inc. v. PSC*, 535 U.S. 635, 646 (2002)).) The District Court explained, "The source of the claims is that the Defendants['] *continued* enforcement action against Plaintiffs after the General Assembly changed the law. But the enforcement action is complete and Brewed's alcohol license is revoked." (*Id.* (emphasis added) (citations and internal quotation marks omitted).) Accordingly, for this reason as well, the *Ex parte Young* exception does not apply, and sovereign immunity bars the First Amendment and procedural due process claims.[6]

The District Court also correctly held that Appellants' claims for declaratory or injunctive relief against the Governor in his individual capacity "are indistinguishable and will be treated the same as the Plaintiffs' official-capacity claims seeking the same relief." (*Id.* at 417.) According to the District Court, "a plaintiff cannot 'sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job.'" (*Id.* (quoting *Cmty. Mental Health Servs. v. Mental Health & Recovery Bd. Serving Belmont, Harrison & Monroe Ctys.*, 150 F. App'x 389, 410 (6th Cir. 2005)).) Further, "[a] plaintiff effectively seeks an injunction against a defendant in their official

---

[6] The District Court did not dismiss Appellants' substantive due process claim on the ground of sovereign immunity (MOO, RE 26, Page ID## 415-16.)

14

capacity, even when styled as individual-capacity relief, when the injunction 'would only be useful' to the plaintiff if the injunction transferred to the defendants' successors." (*Id.* (quoting *Cmty. Mental Health Servs.*, 150 F. App'x at 410).) Here, the apparent equitable relief sought – a declaration that Appellees are unlawfully depriving Brewed of its alcohol license and an injunction restoring the license – "relates only to the Defendants' government responsibilities for alcohol licensing and an injunction would only be useful if applied to the Defendants' successors . . .." (*Id.*) Thus, the District Court correctly ruled Appellants' individual-capacity claims seeking equitable relief indistinguishable from the official-capacity claims. (*Id.*)

With respect to Appellants' claims for monetary relief against the Governor in his individual capacity, under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A plaintiff bears the burden of establishing that the defendant is not entitled to qualified immunity. *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 970 (6th Cir. 2004).

Here, Appellants allege the Governor engaged in discretionary acts in responding to their critical social media posts and directing the enforcement action

of ABC. Further, as discussed below in Section IV and as determined by the District Court, Appellants fail to allege that the Governor's conduct violated their First Amendment free speech or Fourteenth Amendment due process rights. (*See* MOO, RE 26, Page ID# 421.) Accordingly, the Governor is entitled to qualified immunity, barring Appellants' individual-capacity claims against him seeking monetary relief.

In sum, the Governor is immune from Appellants' suit, and this Court should affirm the District Court.

## IV. Appellants Fail To State Any Claim Upon Which Relief Can Be Granted.

Construing the Complaint's allegations in the light most favorable to Appellants, the Complaint still fails to set forth actions of the Governor that meet the necessary elements of a First Amendment retaliation claim, a procedural due process claim, or a substantive due process claim.

### A. Appellants Cannot Prevail on Their First Amendment Retaliation Claim.

To prevail on a civil rights claim pursuant to 42 U.S.C. § 1983, plaintiffs must demonstrate that (1) "a person acting under color of state law"; (2) "deprived [them] of a right secured by the Constitution or laws of the United States." *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006). In a free speech retaliation claim, plaintiffs must prove that they were involved in activity protected by the free

speech clause of the First Amendment, they faced an adverse action that would deter a person of ordinary firmness from continuing to engage in the protected activity, and a causal connection, i.e., that the adverse action was motivated by the protected conduct. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399 (6th Cir. 2010) (citation omitted). Here, Appellants' Complaint fails to allege facts plausibly showing that the Governor took adverse action against them or that his actions were motivated by their protected speech.

The Complaint does not establish an adverse action by the Governor. The Complaint alleges that the Governor, "in public statements and speeches, directly addressed the [March 2020] speech of Plaintiffs, usually in a manner that expresse[d] his anger at such speech." (Complaint, RE 1, Page ID# 4, ¶ 16.) The Complaint, however, does not set forth any specific statements of the Governor or allege how such statements adversely impacted their protected activity. Furthermore, as recognized by the District Court, in considering whether an action is adverse, "criticism, accusations, threats, or bad mouthing are not enough." *Mills v. Williams*, 476 F. Supp. 2d 653, 662 (E.D. Mich. 2007). (*See also* MOO, RE 26, Page ID# 423 n. 3.)

Appellants conceded in their Complaint that the institution of the ABC enforcement action was not adverse, admitting ABC initiated the action in response to Appellants' "non-compliance with [public health] orders." (Complaint,

17

RE 1, Page ID# 5, ¶ 18.) They allege, however, that the "continuation of the enforcement action against Brewed, including up to the revocation of its alcohol license, was an adverse action . . .." (*Id.* at ¶ 38.) As recognized by the District Court, however, "[it] seems illogical to suggest that the continuation of [an action] that was already under way could possibly be retaliatory." (MOO, RE 26, Page ID# 424 (quoting *Ryan v. Blackwell*, 979 F.3d 519, 525 (6th Cir. 2020)).) Further, the District Court correctly found that even if the change in state law abrogated Appellees' ". . . authority to enforce the executive order, the Department of Alcoholic Beverage Control had an independent basis to revoke Brewed's license." (*Id.* (citing RE 23-3 at 1-2;[7] R. 23-4 at 1-2[8]).) According to the District Court, Appellees therefore had no obligation to discontinue enforcement proceedings, and Cooperrider and Brewed thus failed to plausibly allege adverse action. (*Id.*)

Moreover, the Complaint fails to allege that the Governor caused the continuation or the outcome of the enforcement action. Instead, the Complaint alleges, with no support, that the Governor "directed" that no settlement be offered to Brewed and that the final order was "in accord with directives . . . from [Governor] Beshear . . .." (Complaint, RE 1, Page ID## 8-9, ¶¶ 34-35.) Regardless of that bald assertion, Appellants do not allege that they sought a settlement, that

---

[7] ABC Emergency Suspension Order, Page ID## 344-45.

[8] ABC Notice of Violation, Page ID## 354-55.

they would have accepted a settlement, or that a settlement would have prevented revocation of their license. Indeed, Appellants indicate that dismissal of the enforcement action was the only appropriate outcome.

Additionally, as the District Court determined, "the long duration between the Plaintiffs' speech and the Defendants' actions is a weak indicator, if any, of causation." (MOO, RE 26, Page ID# 425.) *See also Vereecke*, 609 F.3d at 400-410 (only "extremely close temporal proximity could permit and inference of retaliatory motive"). Here, the ABC enforcement action began on November 25, 2020 – eight months after Cooperrider criticized the Governor's COVID-19 response in March 2020 and two months *prior* to Cooperrider petitioning for the Governor's impeachment. (Complaint, RE 1, Page ID## 4-5, ¶¶ 13-14, 18-19.) As the District Court stated, the Complaint alleges that Appellees "'persisted with enforcement' on May 21, 2021, 'directed that no[] settlement be offered' in late summer of 2021, and finally revoked the license on March 4, 2022." (MOO, RE 26, Page ID# 425 (citing Complaint, RE 1, pp. 8-9).) The District Court noted that the first adverse action complained of – persisting with enforcement – occurred more than five months after Cooperrider supported the Governor's impeachment, and the license revocation occurred two years after Appellants began criticizing the Governor. (*Id.* at 426.) The District Court found "[t]his five-month to two-year duration between the speech and action [to be] insufficient to plausibly allege

causation." (*Id.* (citing *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (finding that temporal proximity of "two to five months" between protected conduct and adverse action is insufficient); *Boshaw v. Midland Brewing Co.*, 32 F.4th 598, 605 (6th Cir. 2022) (finding that a three-month proximity was "a firm indicator of a lack of a causal link")).)

The District Court further found that the Complaint's allegations that Appellees knew and disapproved of Appellants' criticism of the Governor, "coupled with a weak temporal link, do not satisfy the causation element." (*Id.* (citing *Boshaw*, 32 F.4th at 605-06 (holding that three months between the speech and adverse action, coupled with allegations that the defendant "expressed anger toward him" after learning about the speech and became more scrutinizing of the plaintiff were insufficient to show causation)).) The District Court then explained that "causation is further lessened because the enforcement action was already existing." (*Id.* (citing *Yablonsky v. Cal. Dep't of Corr. & Rehab.*, No. 18-cv-1122-AGS, 2022 U.S. Dist. LEXIS 180054, at *17 (S.D. Cal. Sept. 30, 2022) (holding that conduct cannot be said to cause an action to continue "in the same manner as before")).) The District Court concluded, "Simply put, the Plaintiffs allege that they spoke critically about Governor Beshear and the Defendants knew about and acknowledged the criticism. Then, months later, the Defendants continued an

20

existing action. This fails to establish that the protected conduct was a motivating factor behind any adverse action." (*Id.* (citation omitted).)

Alternatively, the District Court found that even if Appellants had sufficiently alleged causation, Appellees demonstrated that they would have taken the same action in the absence of the speech. (*Id.* at 427 (citing *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 371 (6th Cir. 2011)).) Specifically, Appellees "showed that they possessed multiple, independent bases to revoke Brewed's license." (*Id.* (citing the record).)

In sum, because the Complaint fails to establish an adverse action or a sufficient causal link between Appellants' protected speech and the alleged adverse action, it fails to raise a plausible claim of First Amendment retaliation. The Court should affirm the District Court's Order dismissing that claim as to the Governor.

### B.    Appellants Cannot Prevail on Their Due Process Claims.

Under the Fourteenth Amendment to the United States Constitution, no state shall "deprive any person of life, liberty, or property, without due process of law…" Procedural and substantive due process claims require a plaintiff to allege that the interest at stake is a protected liberty or property interest, *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976), and that the deprivation of that interest contravened the notions of due process. *Kentucky Dep't of Corrections v.*

*Thompson*, 490 U.S. 454, 460 (1989). Here, the District Court correctly ruled that Appellants' Complaint fails to state a due process claim.

### 1. The Complaint fails to allege a procedural due process violation.

"Procedural due process rules are meant to protect persons not from deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). The due process clause generally requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950).

Here, Appellants do not allege that they were denied notice and a hearing prior to the revocation of Brewed's alcohol license. In fact, they admit that they were given a hearing. (Complaint, RE 1, Page ID# 8, ¶ 31 ("On or about May 21, 2021 the license revocation matter came for hearing.").) Instead, Appellants base their procedural due process claim on the allegation that legislation passed by the General Assembly after the ABC commenced enforcement proceedings against Brewed should have caused ABC to cease the enforcement. Procedural due process, however, guarantees a right to process, not the right to be free from process. Indeed, "[a] procedural due process limitation . . . does not require that the government refrain from making a substantive choice to infringe upon a person's life, liberty, or property interest. It simply requires that the government provide

'due process' before making such a decision." *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996). Thus, as the District Court determined, Appellants "do not allege a plausible procedural due process violation." (MOO, RE 26, Page ID# 428.)

Further, the District Court properly rejected Appellants' assertion of a procedural due process violation based on their allegation that "the Governor's personal animus permeated the end decision." (*See* RE 19, Page ID# 265.) As recognized by the District Court, *Williams v. Pennsylvania*, 579 U.S. 1 (2016), the case cited by Appellants in support of their claim, is inapplicable. (MOO, RE 26, Page ID# 428.) The *Williams* Court noted that "[d]ue process guarantees an absence of actual bias on the part of a judge[,]" 579 U.S. at 8, and "decided when the 'likelihood of bias on the part of the judge is too high to be constitutionally tolerable.'" (MOO, RE 26, Page ID# 428 (quoting *Williams*, 579 U.S. at 8).) As the District Court explained, however, "This protection does not extend to all aspects of an enforcement action; the procedural due process analysis for bias 'focuses on the decision-maker, not the investigator.'" (*Id.* (quoting *Herman v. Ohio Univ.*, No. 2:19-cv-201, 2019 U.S. Dist. LEXIS 203111, at *20 (S.D. Ohio Nov. 22, 2019)).) Here, the Governor did not preside over the ABC administrative enforcement action against Appellant Brewed. Indeed, Appellants admitted that the

Governor "is not an adjudicatory official." (RE 19, Page ID# 273.) Accordingly, Appellants cannot show a procedural due process violation based on *Williams*.

Moreover, as the District Court found, "only 'the most extreme of cases' raise due process concerns." (MOO, RE 26, Page ID# 429 (citing *Cicchini v. Blackwell*, 127 F. App'x 187, 191 (6th Cir. 2005)).) The District Court continued, "The Plaintiffs' nonconclusory allegations assert only that the Defendants continued an enforcement against the hearing officer's recommendation and without offering the Plaintiffs an opportunity to settle. These allegations fail to plausibly show how Governor Beshear held bias against the Plaintiffs or how his bias 'permeated' the proceedings to cause a procedural due process violation." (*Id.* (internal citation omitted).)

This Court should affirm the District Court's decision to dismiss the procedural due process claim as to the Governor.

### 2. The Complaint fails to allege a substantive due process violation.

"Substantive due process is '[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed.'" *Parrino v. Sebelius*, 155 F. Supp. 3d 714, 719 (W.D. Ky. 2015) (quoting *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003)). Substantive due process specifically "'protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of

24

the people as to be ranked fundamental, and the interest in freedom from government actions that 'shock the conscience.'" *Id.* (quoting *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014)). It further "protects an individual's 'right to be free from "arbitrary and capricious" governmental actions, which is another formulation of the right to be free from conscience-shocking actions.'" *Id.* (quoting *Range*, 763 F.3d at 588).

Here, no fundamental interest is at issue, as "[t]he regulation of business operations does not 'impinge on fundamental rights.'" *Talleywhacker, Inc. v. Cooper*, 465 F. Supp. 3d 523, 537 (E.D.N.C. 2020) (citing *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 426 n. 5 (2010)). Instead, the Complaint claims the enforcement action was "arbitrary and capricious and involved the singling out of Plaintiffs." (Complaint, RE 1, Page ID# 11, ¶ 46.) A substantive due process claim that a defendant's actions were arbitrary and capricious requires a plaintiff to establish that the actions were not related to a legitimate government interest. *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997). Additionally, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Parrino*, 155 F. Supp. 3d at 723 (citing *Lewis*, 523 U.S. at 846).

As the District Court noted, "Here, the Plaintiffs argue that the Defendants had no rational basis for continuing the enforcement against Brewed because the

Kentucky legislature passed a law that prohibited agencies from enforcing executive orders related to COVID restrictions." (MOO, RE 26, Page ID# 430.) As the District Court found, however, "even if the change in state law abrogated this ground for enforcement, the enforcement rested on other, independent grounds." (*Id.*) Specifically, "[t]he enforcement action was also based on KRS 244.120," an independent basis for the action that does not rely on the Governor's executive orders. (*Id.*) As the District Court held, "Kentucky certainly possesses a legitimate interest in 'regulating the types, modes, and circumstances of alcohol sales.'" (*Id.* (quoting *37712, Inc. v. Ohio Dep't of Liquor Control*, 113 F.3d 614, 620 (6th Cir. 1997)).)

Further, there is no dispute that when ABC began the enforcement action, the executive orders were in effect, and the state has a legitimate interest in enforcing the law as it existed at the time Appellants violated it. *See Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 770 (6th Cir. 2005) ("under rational basis review, . . . a purported rational basis may be based on 'rational speculation unsupported by evidence or empirical data' and need not have a foundation in the record") (citation omitted); *see also 37712, Inc.*, 113 F.3d at 620 ("[I]f any conceivable legitimate governmental interest supports the contested ordinance, that measure is not 'arbitrary and capricious' and hence cannot offend substantive due

26

process norms."). Moreover, the facts do not show egregious official conduct, but instead show, at most, a dispute concerning the retroactivity of state laws.

The District Court also correctly rejected Appellants' substantive due process claim based on the allegation that the state singled them out for punishment. (MOO, RE 26, Page ID## 430-31.) The District Court first discarded Appellants' reliance on *Paterek v. Village of Armada*, 801 F.3d 630 (6th Cir. 2015). In *Paterek*, the local Planning Commission attempted to treat Paterek's business adversely for "violations" that were not true violations. The Planning Commission: (1) demanded that Paterek remove a barbeque grill next to an authorized lunch area in the business's parking lot as alleged "outside storage" in violation of his Special Approval Land Use permit ("SALU"), *id.* at 639, even though the "assertion that a barbeque grill . . . constitutes outside storage strains credulity[,]" *id.* at 648; (2) demanded that Paterek apply for a second SALU at a workshop he purchased even though the workshop previously had been issued the needed SALU which, by law, ran with the land and therefore did not need to be renewed upon a change in ownership, *id.* at 639; and (3) demanded an inspection and Certificate of Occupancy ("COO") for the workshop even though COOs were not within the Planning Commission's jurisdiction, seven other local businesses had no COO on file whatsoever, and previously upon new ownership certain businesses were issued COOs without inspection, *id.* at 640. Even with respect to a

true violation of the SALU, the Planning Commission had declined to sanction another business for a similar infraction, and the Planning Commission's Commissioner admitted the disparate treatment resulted from his own "personality conflict" with Paterek. *Id.* at 638. Here, in contrast, Appellants do not dispute that the ABC commenced administrative enforcement proceedings against Brewed because it was in violation of the law and executive orders in force at the time. Further, there is no evidence – and certainly no admission – that Brewed was handled in a different manner than other businesses.

Next, the District Court correctly rejected Appellants' reliance on *Brookpark Entertainment, Inc. v. Taft*, 951 F.2d 710 (6th Cir. 1991). (MOO, RE 26, Page ID# 431.) In *Brookpark*, the Sixth Circuit considered an Ohio statute permitting "voters living in the same precinct as a liquor establishment [to] revoke the establishment's license by referendum within one year of a finding of any liquor law violation." 951 F.2d at 712. The Court held that this statute failed to provide due process and constituted an "[in]valid delegation of legislative power because it allow[ed] the voters to permanently close only those establishments that they dislike[d]." *Id.* at 716. The Court explained that with this type of "targeted" referendum, "[t]he concern is that the voters might 'gang up' to drive out of business a seller of liquor whom they disliked for reasons unrelated to any plausible public interest. This is a distinct type of arbitrary action that the requirement of fair procedure is designed to

prevent, or at least make less likely to occur." *Id.* (quoting *Philly's v. Byrne*, 732 F.2d 87, 92 (7th Cir. 1984)). In other words, the Court found that Ohio's referendum law violated *procedural due process* by permitting voters arbitrarily to revoke a licensee's license without any standards or hearing. Here, as discussed above, Brewed received notice and a hearing under the relevant Kentucky statutes prior to revocation of its license.

In short, as the District Court explained, both *Paterek* and *Brookpark* "involved actions that were unrelated to a legitimate government interest. In contrast, Appellees possessed a 'conceivable legitimate government interest' for the enforcement: KRS 244.120 and preventing disorderly behavior related to an establishment with an alcohol license." (MOO, RE 26, Page ID# 431.) Appellants' Complaint fails to raise a plausible substantive due process claim, and this Court should affirm the District Court's decision to dismiss the claim as to the Governor.

> **3.   Even if the Complaint's due process claims do not fail as a matter of law, because they rely on interpretations of state law that Appellants are actively adjudicating in state court, the *Younger* abstention doctrine applies.**

With their due process claims, Appellants attempt to turn a dispute over state law, relating to the retroactivity and interpretation of 2021 state legislation, into federal claims. As stated above, those efforts do not set forth plausible due process claims. Even if they did, however, because Appellants initiated the dispute over state law in ongoing state court proceedings, the Court should abstain.

*Younger* abstention derives from a desire to prevent a party from invoking federal jurisdiction to restrain ongoing state proceedings. *Younger v. Harris*, 401 U.S. 37, 44 (1979). It derives from "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* It applies to civil and administrative cases, as well as criminal. *Middlesex Cty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

*Younger* abstention applies "when there is (1) an ongoing state criminal prosecution, (2) certain civil enforcement proceedings that are akin to criminal prosecutions, and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions[.]" *Alexander v. Morgan*, 353 F. Supp. 3d 622, 627 (W.D. Ky. 2018) (citing *Doe v. Univ. of Kentucky*, 860 F.3d 365, 368 (6th Cir. 2017)). Where it applies, courts consider "whether: (1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims." *Id.* (citing *Middlesex*, 457 U.S. 423).

30

Here, Appellant Brewed is a party to a civil enforcement action that is like a criminal prosecution. Further, state proceedings are currently pending, as Brewed appealed the revocation of its alcohol license to state circuit court pursuant to KRS 13B.140, and, Fayette Circuit Court having rendered its ruling, the matter is now pending before the Kentucky Court of Appeals.[9] In the appeal, Appellants raise their argument that the 2021 legislation barred the continuation of enforcement proceedings against Brewed. (*See* Administrative Appeal, RE 8-2.) Thus, the interpretation of the 2021 legislation as to administrative enforcement proceedings is currently before the state court.[10] Appellants' procedural and substantive due process claims ask the Court to interpret the same legislation to determine whether Appellants are correct that the enforcement proceedings against them should have ceased upon Kentucky's highest court ruling on the constitutionality of the legislation. If the Court agrees with Appellants, their lawsuit asks the Court to restrain or enjoin the ongoing state proceedings.

Accordingly, to the extent the Court finds error in the District Court's ruling that Appellants have not raised cognizable procedural and substantive due process claims, any such error is harmless because *Younger* abstention applies.

---

[9] *See supra*, n. 2.

[10] In fact, the Fayette Circuit Court ruled partly in Appellants' favor regarding the retroactivity of the 2021 legislation.

**V.      The Statute Of Limitations Bars Appellants' Claims.**

In addition, Appellants' claims are time-barred. The applicable statute of limitations bars Appellants' 42 U.S.C. § 1983 claims. Because Congress did not set out a statute of limitations for claims brought under § 1983, the Supreme Court has directed that "courts entertaining claims brought under 42 U.S.C. § 1983 should borrow the state statute of limitations for personal injury actions. *Owens v. Okure*, 488 U.S. 235, 236 (1989). In Kentucky, the statute of limitations for personal injury actions is one year. KRS 413.140(1)(a). *See also Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990) ("[W]e conclude that section 1983 actions in Kentucky are limited by the one-year statute of limitations found in section 413.140(1)(a).").

Without specifying the date, the Complaint here vaguely alleges that Governor Beshear "in public statements and speeches, directly addressed the [March 2020] speech of Plaintiffs, usually in a manner that expresse[d] his anger at such speech." (Complaint, RE 1, Page ID# 4, ¶ 16.) The District Court found that the Complaint "suggests" that Governor Beshear made public statements about Appellants in the year 2020. (MOO, RE 26, Page ID# 423 n. 3 (citing Complaint, RE 1, Page ID# 5, ¶ 20).) The Complaint also alleges that Appellees instituted an enforcement action against Appellants on or about November 25, 2020, resulting in a final order from ABC on March 4, 2022, revoking Brewed's alcohol license. (Complaint, RE 1, Page ID# 5, ¶ 18.)

Appellants brought this action on March 24, 2022, more than one year removed from any 2020 speech or remarks of the Governor addressing that speech. The ABC enforcement action began in November 2020, well over a year prior to the commencement of this action. To the extent Appellants allege that the Governor's statements or the institution of ABC enforcement action were themselves retaliatory, by their own admission, Appellants knew of the alleged retaliation at that time. Rather than filing this action then, the Complaint shows that Appellants sat on their rights, only seeking recourse when the enforcement action resulted in the revocation of Brewed's alcohol license. As such, the statute of limitations prohibits the consideration of these allegedly retaliatory acts. *See Henley v. Tullahoma City Sch. Sys.*, 84 F. App'x 534, 538-39 (6th Cir. Dec. 5, 2003) (distinct acts outside of statute of limitations cannot be considered).

## CONCLUSION

Appellants' Complaint fails to set forth a plausible claim against the Governor. Further, the Governor is immune from suit, and the Complaint fails to state a claim upon which relief can be granted. Additionally, the statute of limitations bars the claims against him. This Court should affirm the District Court's Order dismissing the Complaint as to the Governor.

/s/ *Laura C. Tipton*
Travis Mayo
General Counsel
Taylor Payne
Chief Deputy General Counsel
Laura C. Tipton
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov

*Counsel for Governor Andy Beshear*

## CERTIFICATE OF COMPLIANCE

This brief complies with Fed. R. App. P. 32 and the type-volume limitation because it contains 7,563 words and uses proportionally spaced typeface of Times New Roman in 14 point.

/s/ *Laura C. Tipton*


## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2024, I electronically filed the foregoing Appellee Brief via the Court's CM/ECF system, causing all counsel of record to be served.

/s/ *Laura C. Tipton*

## ADDENDUM

| RE # | Document | Page ID # |
|---|---|---|
| 1 | Complaint | 1 |
| 6 | Summons Return | 59 |
| 8 | Motion to Dismiss by Governor Beshear | 75 |
| 8-1 | Memorandum in Support of Motion to Dismiss | 77 |
| 8-2 | Administrative Appeal | 97 |
| 19 | Response to Governor Beshear's Motion to Dismiss | 250 |
| 22 | Reply in Support of Governor Beshear's Motion to Dismiss | 311 |
| 23-3 | ABC Emergency Suspension Order | 344 |
| 23-4 | ABC Notice of Violation | 354 |
| 26 | Memorandum Opinion & Order | 409 |
| 34 | Judgment | 499 |
| 35 | Notice of Appeal | 500 |